Good morning, Your Honors. May it please the Court, my name is Stacey Tolshin and I represent Petitioner David Singui, who is present with me in court today. I would like to reserve two minutes of my time for rebuttal. There are three legal issues presented to the Court today regarding the denials of the motions to reopen. The first is whether Petitioner met the regulatory standard requiring a change in circumstances arising in the country of the statute. The second is whether the BIA erred in requiring a changed country condition standard. And the third is whether the Board abused its discretion in denying the motions to reopen for the failure to include an affidavit. The first issue presented is whether Petitioner met the changed circumstances requirement of the regulation. If this standard was met, then the Court need not address whether the changed country conditions of the statute is qualitatively the same as the changed circumstances of the regulation. This Court's decision in Malte clearly controls. Malte examined the motion to reopen regulation and held that a motion to reopen almost always will be related to the initial claim for asylum and withholding of deportation. The issue is whether the new evidence establishes a prima facie claim where the prior evidence did not. The Board's decisions failed to establish a new evidence. The new evidence is the email from J.J. Penda, who was a colleague of Petitioner's who was arrested in 2009 and held for four months in Cameroon. Where is Cameroon? We're in Africa. I'd like the people to know where Cameroon is. West Africa, thank you. I had a stamp collection. I had some stamps from Cameroon. I had some from West Africa. It's a politically volatile place to be sure. There also in the record was an Amnesty International report about the arrest of the Social Democratic Front members, of which Petitioner was a leader in 1990. There's also the 2010 article from the Cameroonian newspaper about the arrest of not only J.J. Penda, but another prominent activist from SDF who had returned to Cameroon in 2010. This evidence was significant because it specifically addresses the lack of evidence that was found before the immigration judge. So where the Board erred was stating that the conditions alleged are the same. The issue is not what Petitioner alleged in the deportation case before the judge, but what the judge found. The judge found there was no objective evidence of a well-founded fear of persecution because there was no corroboration beyond Petitioner's own testimony. This new evidence is that corroboration that was lacking. And therefore under Malti, this is a change in circumstances arising in Cameroon and reopening is required. Now the BIA in its denials really fault the Petitioner for failing to provide an affidavit indicating how the new evidence came into his possession. Is that an improper assessment of credibility at this stage? What should the BIA have done with regard to the lack of an affidavit? Right. So the BIA should have reopened because the regulation at 1003.2c says new evidence shall include an affidavit or other evidentiary materials. And in this case it's really significant because the immigration judge found that there was a lack of credibility regarding a fear of persecution in Cameroon because there was no corroboration. And so an affidavit would have been just self-serving and clearly would have been insufficient. That's why the secondary evidence of J.J. Penza's email and the articles was so important. So there's a case that just came down that was submitted by Rule 28J called Indrajaja v. Holder from the Second Circuit. And that site is 737 Fed Third 212. Indrajaja addresses precisely this issue. It was a motion to reopen where there was no affidavit and other evidentiary material was included. And the Second Circuit found that the board abused its discretion in denying the motion because an affidavit was not required by the regulation. But more importantly, the petitioner had no personal knowledge about these events because Indrajaja, like Petitioner Singwe, has been in the U.S. And so the events that occurred in Cameroon occur without him being present. So it was an abuse of discretion for the board to deny the motions based on the lack of affidavit. I also wanted to address the statutory issue here. Essentially, this is a deportation case. So the deportation proceedings started before April 1st, 1997. The motion to reopen statute requiring a change in country conditions was not in effect until April 1st, 1997. And so both parties agreed that the statute does not apply. But the issue is whether the use of changed country conditions in the statute qualitatively means the same thing as changed circumstances in the regulation. And I think the regulation showed that these are two different things. The regulation first establishing changed circumstances was issued in March of, I'm sorry, April of 1996 prior to the September 30th, 1997 enactment of IHRA IHRA. The regulation stated that a change in circumstances arising in the country of Congress enacted IHRA IHRA to require a change in country conditions. And in March of 1997, the regulations were again amended to require a change in country conditions, but only for removal cases. And what's interesting is that only the immigration judge motion to reopen regulations were changed. But the board regulations still say deportation, whereas the immigration judge regulation says removal. And the deportation language of changed circumstances was kept for motions to reopen before the board. So this shows the agency's understanding that a different standard applies to deportation than removal cases. But in addition, the statute also supports this. Congress was aware, is presumed to be aware, of the changed circumstances standard that was in the regulation. But then when they enacted the statute, they chose to use changed country conditions. So that's significant. In addition, Congress used the term changed circumstances in the asylum statute at 8 U.S.C. 1158A2D, which is the exception to the one-year filing requirement for asylum. The fact that they used changed circumstances in the statute and changed country conditions for the motion to reopen statute again shows a qualitative difference. It may normally not matter, but it may matter in a case like this, where yes, country conditions have been bad for SDF members, but here there really were changed in individual circumstances in Cameroon regarding the arrest of two prominent activists who were active with Petitioner and the newspaper article which names Petitioner as well as the other prominent activists. So in this circumstance, if the board is correct that changed country conditions requires a sweeping change in country conditions, then the regulation must be a different standard. I would like to reserve my remaining time. Thank you. I hope everyone in this room follows that argument. May it please the Court, Elizabeth Kerlin on behalf of the United States Attorney General. The board did not abuse its discretion in finding that Petitioner failed to establish materially changed circumstances in Cameroon to support his untimely and number-barred motions to reopen when his proffered evidence was of limited evidentiary value because it was not supported by affidavits, did not address his prior adverse credibility determination, and did not establish Do the regulations require an affidavit? The regulations require affidavits or other evidence. And the board Why isn't the evidence presented in this case fall in the category or other evidence? It did. The board considered it as other evidence. But the board noted that the lack of affidavits was significant in light of the prior adverse credibility determination. Because the problem here is that Petitioner, the broad Petitioner has a prior adverse credibility determination that was affirmed by this Court already. And that adverse credibility determination was a broad one. It is not, as Petitioner claims, merely based on lack of corroboration. It was based on significant inconsistencies and omissions between his testimony and his asylum application. And that is why the board What Petitioner claims is that the board was requiring that he submitted affidavits when the board didn't do that. Its decision, its May 2010 decision actually stated the lack of sworn statements or affidavits supporting the allegations is significant given the prior findings in the case that specific parts of Petitioner's testimony were not credible. And the board goes on to cite parts of the immigration judge's decision finding the testimony incredible. And that's also significant because the evidence that Petitioner submitted in his motion to reopen is unreliable on its face. And it's apparent from the record. And that is when you look at the article submitted in his second motion to reopen, it alleges that J.J. Penda was questioned in May of 2009 at the airport in Cameroon and detained for four months, so until September 2009. While the J.J. Penda's emails that he submitted in his first motion to reopen claim that same individual claimed that he was safely in the Ivory Coast on June 19, 2009 that's the exact date when the article says that he was supposedly detained in Cameroon and that he was arrested on February 17, 2008 at the airport in Cameroon and detained for four months. So the agency's prior adverse credibility determination which this court affirmed was broadly based on those significant inconsistencies and it goes back to the evidence that he submitted in his... Did he have one lawyer throughout? I'm sorry, Your Honor? Did he have one lawyer throughout all these proceedings? Yes. Well, he had, yes. The attorney that he had in his prior, during his deportation hearings Same lawyer? He had the same attorney, Your Honor. From beginning to now? No. That's what I thought I asked you. Right. And the attorney... Who filled out that application initially? The application, and that's the other thing, is that before the immigration judge he claimed that he had an unrepresentative attorney fill it out. I asked you who filled it out. Himself. Because the application indicates that nobody completed it but himself. The part where it says any other person who fills out the application, it was left blank. So it indicates that he filled it out himself. And when the immigration judge asked him about... This goes back to the adverse credibility determination, which this Court already affirmed. But during that time, the immigration judge asked him about having someone else fill it out and he said, well, he also had a hearing before an asylum officer and he said, I'm telling you all the things that I'm telling you right now, I told the asylum officer. Yet the immigration judge found it significant that none of those... any of those changes or additions or omissions were ever made to his asylum application. So he filled out his asylum application. That adverse credibility stands. That has already been affirmed by this Court. And so in looking back now at his motion to reopen, the evidence that he submitted, the Board looked at it and said it was unreliable and in addition to the fact that it's unreliable, Petitioner himself has not submitted any affidavits or sworn statements to... Does it make a difference that in his statement, although it doesn't say I declare under penalty of perjury, it does say the facts set forth here are my personal knowledge and if called upon to do so, I would and could testify to the following. Does that make any difference? It does, Your Honor. It is significant because under this Court's case law has recognized that under those circumstances, that is still not an affidavit because it doesn't attest to... it doesn't submit it under penalty of perjury. And the Supreme Court has recognized that by finding that affidavits that are... that affidavits have to be sworn statements. And in INS v. Zhong Hao Wang, the Court recognized that, that there's a difference between statements that just say this is what happened and here and I'll testify to this versus statements that say I swear under penalty of perjury that this is true. And that's also significant because under this Court's case law, the Board has to accept as true statements made in a motion to reopen affidavits. But unless they find... they set out the reasons for its inherent unreliability. Is it a regulation that permits submission of evidentiary material without an accompanying affidavit? The regulations merely provide, Your Honor, that a petitioner who submits a motion to reopen may submit affidavits or other evidentiary materials. The difference between this case and the cases that petitioner relies upon like Malti is that those cases did not involve a petitioner who was found incredible. Malti did not involve a petitioner who was found incredible with regards to his claims in the underlying removal proceedings. Well, don't we now have information that he was credible? No, we have no evidence of that, Your Honor. We don't have this newspaper that has his name. We don't have information from these two other folks. No? The only evidence he submitted was e-mails from an individual named J.J. Penda in his first motion to reopen and an unsworn statement from him. In the second motion to reopen, he submitted a questionable article, which the Board noted the fact that it was questionable. I just noted before this Court the apparent inconsistency between the claims in those documents. And it's significant because those documents don't address the prior evidence. We deal with inconsistencies all the time. We're in a system where the immigration laws are really more complicated than the Internal Revenue Code. And we know that so many of these people go to Notorio's. I don't know whether he went to one of those folks or not. But we allow an immigration court a person to be represented by a disbarred lawyer because the view of the Justice Department is that a disbarred lawyer is better than no lawyer. Is that right? Your Honor, I cannot speak to that. Every time I've asked that question, the answer has always been yes, a government attorney. We're dealing in a situation where we don't know where these folks are getting information. We don't know who's advising them because the system allows this. And so many people will go to some so-called expert who will tell them what to put in and take their money, and that's pretty rampant in this area. Is it not? Your Honor, in this case, it doesn't appear that that is what happened. And what we're looking at now is the question of whether the Board acted irrationally in rejecting questionable documents submitted by a petitioner who was previously found incredible, where those documents, which are other evidence, were not supported by affidavits and did not address the prior evidentiary problems. They didn't address his prior adverse credibility determination. They're just documents just asserting these claims which have no support. And so the question is whether the Board acted irrationally in looking at those documents and saying they don't address what has gone before and they don't establish changed circumstances. Your Honor, I see that my time is out. May I close? Sure. So in conclusion, therefore, the Court should deny the petitions for review because the Board applied the correct standard in finding that petitioner failed to establish materially changed circumstances in Cameroon necessary to support his motions to reopen. Okay. Anything else? No, Your Honor. Now, what have you got to say about all this? Your Honor, just to clarify that there was a notary who filled out the asylum application. Petitioner explains that in the unsworn affidavit that was submitted in the first motion to reopen at page 90, that there was a different attorney before the immigration judge named Barry Fagan and then a different attorney named Victoria Suh who did the motions to reopen, and then I took over from there after the Ninth Circuit case was filed. In addition, the respondent states that the Board found that the 2010 article submitted from Cameroon was not believable. The Board actually doesn't provide the rationale that counsel has provided, and the Court's decision in SEC v. Chenery establishes that the Court can only affirm for the reasons stated by the agency. So there is no discussion of this inconsistency regarding when J.J. Pender was arrested, and there cannot be post hoc rationalizations now made to defend that. In addition, counsel states that there were only the email from Pender and the article from 2010 submitted, but in the first motion to reopen, there's actually two country conditions submitted regarding the arrest of SCF leaders, and that's in the record at page 93 and 97. So regardless of Pender's statement and regardless of the 2010 Cameroon article, there's Amnesty International reports discussing the arrest of SCF leaders, I believe, in 2008. I would like to close. Thank you very much. Thank you. Well, the lawyers that represented your client earlier, what were their names? There was a notary. We don't have the name. A notario. Right. We only use notario usually for the Spanish-speaking ones, but it's the same thing. Yeah. So who was this notario? I don't have that evidence in the record, Your Honor. The petitioner had just come from Cameroon and went to somebody he trusted. He barely spoke English, and that person filled it out. And as you know, notarios don't typically sign the application for asylum. They make it look like the person did it themselves. You don't know who that person was? Do you remember the name? I can ask the petitioner if you like. Well, go ask him. Okay. Okay. Do you remember? Okay. Yeah, he doesn't remember, Your Honor. He was very new to the country when he did that, and it was in 1993. The attorney before the immigration judge was Barry Fagan, and the motion to reopen attorney was Victoria Sa. So he doesn't know who the notario was he went to? No. He would have to go and look at his records, but it was never in the record of proceeding since he just went to somebody that was in the community. Was it somebody in Los Angeles? Was he from Cameroon? No, he was from the Middle East. From the Middle East. He was from the Middle East. What? He was from the Middle East, not from Cameroon. But it's not unfortunate. But was it someone in Los Angeles that he saw? Yes, it was. Huh? It was just somebody from Los Angeles. Well, you know, I'd like to know who it was, but you never thought about that, did you? Well, it's not in the record, and so I wasn't able to bring that forward. There's his declaration on page 90, unsworn declaration on page 90 detailing this. All right. If the court wants, we can try to investigate and submit by Rule 28A. No, no, no. I'm just asking this question. Okay. Okay. Thank you. All right. Thank you very much. Madam Submitter.
judges: Pregerson, Fernandez, Nguyen